David W. Berry, Esq. (SBN 180995)
**BERRY & BABB LAW, P.C.**
3550 Round Barn Blvd., Suite 312
Santa Rosa, CA 95403
Telephone: 707-800-0550
Facsimile: 707-800-0551
david@berryandbabb.com

Attorney for Plaintiff,
BLACK OAK GROUP INC.
d/b/a CARMET SCIENTIFIC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **BLACK OAK GROUP INC. d/b/a CARMET SCIENTIFIC,**<br><br>Plaintiff,<br><br>v.<br><br>**JOLT CHARGE, INC.,**<br><br>Defendant. | Case No. 3:26-cv-10576<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>DEMAND FOR JURY TRIAL |

**PARTIES**

1. Plaintiff Black Oak Group Inc. d/b/a Carmet Scientific ("Carmet") is a Wyoming corporation. Carmet conducted the business activities relevant to this action through its Chief Executive Officer, Wallis "Nobby" Clark, from his office in Sonoma County, California.

2. Carmet is informed and believes, and on that basis alleges, that Defendant JOLT Charge, Inc. ("JOLT") is a Delaware corporation.

**SUMMARY OF DISPUTE**

3. This action presents a narrow dispute concerning whether JOLT may enforce asserted patent rights against Carmet's resale of certain electric-vehicle charging equipment Carmet purchased from Equilon Enterprises LLC d/b/a Shell Oil Products US ("Shell").

a. Pursuant to a Purchase and Sale Agreement and Bill of Sale made on December 5, 2025, Carmet acquired Volta electric-vehicle charging stations, BTC charging components, and related equipment (collectively, the "Equipment") from Shell (the "Shell/Carmet Equipment Sale And Purchase"). After adjustments to the quantities of equipment to be transferred as permitted by the agreement, Carmet received approximately 771 Volta charging stations and 888 BTC products.

b. Carmet later learned that JOLT had acquired assets associated with Shell's Volta business from Shell and related entities and contacted JOLT to determine whether JOLT wished to purchase any of the Equipment. During those discussions, Carmet advised JOLT that it was considering a sale of portions of the Equipment to a third party.

c. JOLT responded that sale of certain of the Equipment would infringe patent rights JOLT claimed to have acquired through the Shell/JOLT Transaction. Carmet then sought Shell's position. Shell advised Carmet that it had sold the Equipment to Carmet before the transfer of intellectual-property rights to JOLT and that, accordingly, Shell's view was that JOLT could not prohibit or restrict Carmet from marketing, offering for sale, or selling the Equipment.

d. Carmet provided Shell's position to JOLT and repeatedly asked JOLT to identify the factual and contractual basis for its contrary position.

e. JOLT has since stated that it relies on restrictions in its agreement with Shell and related entities that allegedly limited Shell's authority to sell certain products, but JOLT has not disclosed the operative provision or identified which products sold to Carmet were subject to the asserted interim restriction.

**JURISDICTION, VENUE AND DIVISIONAL ASSIGNMENT**

4. **<u>Jurisdiction</u>**.

a. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). JOLT has asserted that Carmet's proposed sales of certain of the Equipment would infringe JOLT's asserted United States patents under 35 U.S.C. § 271(a) and has

threatened patent-infringement damages, enhanced damages, and attorneys' fees. Carmet denies liability because, among other reasons, the patent rights JOLT asserts against those products were exhausted by Shell's authorized sale of those products to Carmet.

b. This Court has specific personal jurisdiction over JOLT because JOLT purposefully directed the patent-enforcement conduct giving rise to this action toward California. After Carmet advised JOLT that it intended to proceed with a third-party sale, JOLT, first through its general counsel and then through outside counsel, directed repeated patent-enforcement communications to Carmet and its representatives in Sonoma County. JOLT demanded that Carmet refrain from selling certain products, demanded return or destruction of certain products, identified patents it contended covered those products, and threatened infringement damages, enhanced damages, and attorneys' fees.

c. Carmet's claim arises directly from that California-directed enforcement conduct. Carmet received and acted upon JOLT's demands in California and refrained from sales in response to JOLT's threatened enforcement. The exercise of specific personal jurisdiction over JOLT in this District therefore comports with due process.

5. **Venue**. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because JOLT is deemed to reside in this District under 28 U.S.C. §§ 1391(c)(2) and (d). JOLT's contacts with this District would be sufficient to subject it to specific personal jurisdiction if this District were a separate State. Venue is independently proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District: JOLT directed the patent-enforcement activity creating this controversy to Carmet and its representatives in this District, and Carmet received and acted upon those demands in Sonoma County by refraining from sales that JOLT contends would infringe its asserted patent rights.

6. **Divisional Assignment.** This action concerns intellectual-property rights and is therefore subject to district-wide assignment pursuant to Civil L.R. 3-2(c) and General Order No. 44.

Venue for this action is proper in any courthouse in this District, and the action is not subject to reassignment based on intra-district venue.

**FACTUAL BACKGROUND**

7. According to JOLT, on or about November 7, 2025, JOLT and related JOLT entities entered into a Purchase and Sale Agreement with Shell, Zeco Systems, Inc., and Volta Charging Industries, LLC to acquire assets associated with the Volta business, including patent and other intellectual-property rights (the "Shell/JOLT Transaction"). JOLT publicly announced that the Shell/JOLT Transaction remained subject to closing conditions and was expected to close on January 1, 2026.

8. Shell sold and transferred the Equipment to Carmet, by way of the Shell/Carmet Equipment Sale And Purchase, while the Shell/JOLT Transaction remained pending. Pursuant to the terms of the Shell/Carmet Equipment Sale And Purchase, title to the Equipment passed to Carmet, including title to the particular articles that are the subject of JOLT's subsequent patent assertions.

9. Among the Equipment Carmet acquired from Shell are media-enabled, fully fabricated Volta charging stations and related articles that JOLT subsequently identified as covered by patents it claims to have obtained via the Shell/JOLT Transaction and contends Carmet cannot offer for sale or sell without infringement, including products identified in JOLT's June 10, June 23, and July 7 communications to Carmet (the "Accused Articles"). Carmet seeks to market, offer for sale, and resell those same Accused Articles and does not seek a declaration authorizing it to manufacture, assemble, or reconstruct a new patented article from separate components.

10. JOLT subsequently publicly announced that, as of January 1, 2026, it had completed its acquisition of the Volta Media Network. Shell's counsel subsequently advised Carmet in writing that "Shell transferred IP rights to Jolt effective Jan. 1, 2026" and that, before that date, "Shell sold equipment to Carmet."

11. Carmet did not know of the Shell/JOLT Transaction when it purchased the Equipment from Shell.

12. The presently available records are consistent with Shell having authority to make that sale. Public USPTO assignment records identify Zeco Systems, Inc. as the recorded assignee of 22 of the 26 issued United States patents identified in JOLT's communications with Carmet, and Shell has publicly identified Zeco Systems, Inc. and Equilon Enterprises LLC as wholly owned companies within the Shell corporate group. Shell's counsel has further stated that Shell did not transfer the intellectual-property rights to JOLT until January 1, 2026.

13. Based on the facts alleged above, including the recorded ownership information described above, Shell's sale of the Accused Articles while the Shell/JOLT Transaction remained pending, and Shell's subsequent statement that the transfer of intellectual-property rights to JOLT did not become effective until January 1, 2026, Carmet alleges on information and belief that the holder or holders of the relevant patent rights authorized Shell's sale of the Accused Articles to Carmet.

## CARMET AND JOLT DISCUSSED JOLT'S POSSIBLE PURCHASE OF THE EQUIPMENT FROM CARMET

14. After Carmet learned of the Shell/JOLT Transaction, Carmet contacted JOLT concerning JOLT's possible purchase of the Equipment. The parties thereafter engaged in discussions concerning the Equipment.

15. On March 31, 2026, JOLT's Chief Executive Officer introduced Carmet to the head of JOLT's U.S. business to "work through the detail" concerning the Equipment.

16. On May 7, 2026, Carmet advised JOLT that it had received a third-party offer to purchase 150 units and intended to proceed with that sale if JOLT was not interested in acquiring the Equipment.

## JOLT ASSERTED PATENT RIGHTS AGAINST CARMET

17. On June 10, 2026, JOLT's General Counsel advised Carmet that JOLT claimed to own or otherwise possess enforceable patent rights covering certain Accused Articles. JOLT asserted that those articles should not be sold or transferred to third parties, demanded their return or destruction, and directed Carmet to pause discussions with prospective purchasers.

18. On June 23, 2026, JOLT's California-based outside counsel, Michael J. Lyons of Morgan, Lewis & Bockius LLP, identified specific Accused Articles and patents JOLT contended covered

those articles, asserted that JOLT had never licensed or authorized Carmet to sell those products, and stated that Carmet's offer for sale or sale of them would infringe JOLT's asserted patent rights. JOLT threatened lost profits, reasonable royalties, enhanced damages, and attorneys' fees if Carmet proceeded.

19. On July 7, 2026, Mr. Lyons provided what he described as "charts demonstrating unequivocally" that products in Carmet's possession were covered by design patents "owned by JOLT." The charts addressed whether particular products were covered by particular patents, but did not identify the owner or assignee of those patents or provide documentation establishing JOLT's ownership.

20. For purposes of this action, the "Asserted Patents" are the following issued United States patents that JOLT identified in one or more of its June 10, June 23, and July 7, 2026 communications in connection with its patent claims concerning the Accused Articles: U.S. Patent Nos. 11,731,526; 12,054,066; D844,559; D876,342; D876,343; D876,344; D876,345; D876,346; D883,199; D893,414; D962,159; D962,856; RE48,500; RE48,837; RE49,540; D967,011; D1,005,937; D1,081,546; D967,012; D1,005,938; D1,066,242; D1,092,377; D1,008,950; D1,051,045; D971,830; and D1,068,646 (collectively, the "Asserted Patents"). Although JOLT's communications also referenced pending U.S. and foreign patent applications and foreign patents, design rights, and registrations, this action seeks declaratory relief only as to the issued United States patents identified above and does not seek adjudication of any pending patent application, foreign patent or design right, trademark, trade dress, or other non-patent right.

21. Carmet presently possesses the Accused Articles and is prepared to resume marketing and selling them upon resolution of JOLT's patent claims. Carmet has refrained from doing so because JOLT maintains that sale of the Accused Articles, without modification to avoid infringement of the Asserted Patents, would constitute infringement and expose Carmet to patent-infringement remedies.

**<u>JOLT's Patent Position Conflicts with Shell's Stated Position</u>**

22. After JOLT asserted that Carmet's resale of the Accused Articles would infringe patents JOLT claimed to own, Carmet sought Shell's position.

23. On August 6, 2026, Shell's counsel advised Carmet in writing: "Shell's position is that the equipment sold pursuant to the Agreement was transferred to Carmet. At this time, Shell is not aware of any restriction that would prohibit Carmet from reselling the equipment." Shell qualified that statement as limited to its own rights and obligations.

24. Carmet then asked Shell specifically whether Shell had transferred patent or other intellectual-property rights to JOLT that prohibited or restricted Carmet from marketing, offering for sale, or selling the Equipment. On August 20, 2026, Shell's counsel responded: "Shell transferred IP rights to Jolt effective Jan. 1, 2026. Prior to that date, Shell sold equipment to Carmet. Accordingly, and without commenting on Jolt's legal position, Shell's view is that Jolt cannot prohibit or restrict Carmet from marketing, offering for sale, or selling that specific equipment."

25. Taken together, Shell's statements reflect Shell's position that its sale of the equipment to Carmet preceded the transfer of intellectual-property rights to JOLT and that, accordingly, JOLT cannot prohibit or restrict Carmet from marketing, offering for sale, or selling that equipment. Those statements are also consistent with Carmet's allegation that the sale of the Accused Articles was authorized by the holder or holders of the relevant patent rights.

**JOLT REAFFIRMS ITS PATENT POSITION AND ASSERTS RESTRICTIONS ON SHELL'S AUTHORITY TO SELL CERTAIN PRODUCTS, CONTRARY TO SHELL'S STATED POSITION**

26. On August 27, 2026, Carmet provided JOLT's counsel with Shell's August 6 and August 20 communications and requested that JOLT withdraw its contention that Carmet's sale of the Accused Articles would infringe patent rights JOLT claimed to have acquired through the Shell/JOLT Transaction. Alternatively, Carmet asked JOLT to identify the factual and legal basis for its position.

27. On August 28, 2026, JOLT's outside counsel, Michael J. Lyons, expressly maintained JOLT's position in a written response to Carmet. Mr. Lyons asserted that because Carmet acquired the Equipment after JOLT entered into the Shell/JOLT Transaction on or about November 7, 2025, Carmet "could not have secured rights to JOLT's patents in connection with

its acquisition of the products in dispute." Mr. Lyons further asserted that Carmet must modify covered products before sale "to avoid using JOLT's patented designs." The letter did not, however, contend that Shell's sale of the Accused Articles to Carmet was unauthorized by the then-holder or holders of the relevant patent rights.

28. On August 31, 2026, Carmet explained that it did not contend that it had acquired JOLT's patents. Carmet asserted instead that, if Shell's sale of the Accused Articles to Carmet was authorized by the then-holder or holders of the relevant patent rights, the sale exhausted those rights in the particular articles sold before the January 1, 2026 transfer described by Shell. Carmet asked JOLT directly whether it contended that Shell's sale of the Accused Articles to Carmet was unauthorized and, if so, to identify the basis for that contention.

29. On September 8, 2026, JOLT's outside counsel, Michael J. Lyons, stated in a letter that JOLT relied, in part, on "restrictions imposed during the interim period on Shell's authority both to sell certain products and to transfer intellectual property rights" as a basis for contending that Shell's December 5 sale did not exhaust the patent rights JOLT now asserts.

30. In the September 8, 2026 letter, Mr. Lyons did not identify any provision imposing those restrictions, which of the products sold to Carmet were among the "certain products" subject to those restrictions, or the holder or holders of the relevant patent rights whose authority was allegedly restricted. He instead stated that confidentiality obligations prevented disclosure of the relevant provisions and proposed that the parties seek Shell's consent to exchange the agreement governing the Shell/JOLT Transaction and Carmet's purchase agreement under a confidentiality agreement.

31. Carmet agreed in principle to a simultaneous, reciprocal exchange of the two agreements subject to appropriate confidentiality protections. The parties attempted to negotiate a confidentiality agreement but did not reach agreement, and no exchange occurred before this action was filed. Accordingly, the agreement governing the Shell/JOLT Transaction and any other documents setting forth the alleged interim restrictions remain outside Carmet's possession or control.

32. JOLT has not withdrawn its position that Carmet must modify the Accused Articles before selling them to avoid infringement of the Asserted Patents. Carmet intends to sell the same articles Shell sold to it without modification undertaken for that purpose. An actual and immediate controversy therefore exists concerning whether JOLT may enforce the Asserted Patents against Carmet's marketing, offer for sale, sale, or transfer of those articles.

33. Carmet asserts no claim against Shell or any Shell-related entity and seeks no determination of contractual liability between JOLT and any Shell entity. This action concerns only JOLT's asserted rights under the Asserted Patents and does not seek adjudication of any pending patent application, foreign patent or design right, trademark, trade dress, branding right, or other non-patent intellectual-property right.

**FIRST CLAIM FOR RELIEF**

**Declaratory Judgment of Exhaustion and**

**Noninfringement of the Asserted Patents**

28 U.S.C. §§ 2201–2202

34. Carmet incorporates the preceding allegations.

35. JOLT claims to own or otherwise possess rights to enforce the Asserted Patents, contends that one or more of those patents cover the Accused Articles, and maintains that Carmet must modify those articles before selling them to avoid infringement.

36. Shell sold the Accused Articles to Carmet by way of the Shell/Carmet Equipment Sale And Purchase. Shell has since stated in writing that its transfer of intellectual-property rights to JOLT did not become effective until January 1, 2026.

37. For the reasons alleged above, Carmet alleges on information and belief that the holder or holders of the relevant Asserted Patents authorized Shell's sale of the Accused Articles to Carmet. The agreement governing the Shell/JOLT Transaction on which JOLT relies to dispute authorization has not been disclosed to Carmet. To the extent an Accused Article is covered by an Asserted Patent, the authorized sale exhausted the patent holder's exclusionary rights under that patent as to the article sold. Carmet does not concede that JOLT owns or otherwise possesses enforceable rights under any Asserted Patent, that any Accused Article is covered by any

Asserted Patent, or that, absent exhaustion, Carmet's sale of any Accused Article would infringe any Asserted Patent.

38. JOLT contends that restrictions in the Shell/JOLT Transaction agreement prevented the Shell/Carmet Equipment Sale And Purchase from exhausting the patent rights JOLT now asserts. Carmet disputes that contention.

39. Any such restriction affects patent exhaustion only if it rendered Shell's sale of the Accused Articles to Carmet unauthorized, as a matter of patent law, by the holder or holders of the relevant patent rights. If the sale was authorized, exhaustion occurred at the time of sale, and a subsequent assignment or transfer could not restore the exhausted patent rights in the articles sold.

40. An actual and immediate controversy exists because Carmet intends to market and sell the Accused Articles without modification undertaken to avoid infringement of the Asserted Patents, while JOLT maintains that doing so would constitute patent infringement and subject Carmet to infringement remedies.

41. Carmet is entitled to a declaration that, to the extent JOLT possesses rights under an Asserted Patent with respect to an Accused Article, those rights were exhausted as to that article by the authorized December 5, 2025 sale and remain exhausted following any subsequent sale or transfer of that article. Accordingly, Carmet's marketing, offering for sale, selling, or otherwise transferring that article without modification to avoid infringement of the Asserted Patent does not infringe that patent to the extent JOLT's rights under it were exhausted as to the article.

## PRAYER FOR RELIEF

WHEREFORE, Carmet respectfully requests that the Court enter judgment:

1. Declaring that, to the extent JOLT possesses rights under an Asserted Patent with respect to an Accused Article, those rights were exhausted as to that article by the authorized sale of that article to Carmet pursuant to the Shell/Carmet Equipment Sale And Purchase and remain exhausted following any subsequent sale or transfer of that article;

2. Declaring that neither JOLT's subsequent acquisition of rights under an Asserted Patent nor any subsequent sale or transfer of an Accused Article revives any patent right exhausted as to that article by the authorized December 5, 2025 sale;

3. Declaring that Carmet's marketing, offer for sale, sale, or transfer of an Accused Article without modification to avoid infringement of an Asserted Patent does not infringe any rights JOLT may possess under that patent to the extent those rights were exhausted by the authorized December 5, 2025 sale;

4. Awarding Carmet its taxable costs as permitted by law; and

5. Granting such other declaratory or non-monetary relief as the Court deems just and proper.

Plaintiff Black Oak Group Inc. d/b/a Carmet Scientific demands a trial by jury on all issues so triable pursuant to Federal Rules of Civil Procedure 38 and 57.

Dated: September 16, 2026

**BERRY & BABB LAW, P.C.**

By: ______________________________

David W. Berry, Esq.
Attorney for Plaintiff
BLACK OAK GROUP INC. d/b/a
CARMET SCIENTIFIC